**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ORBIN ZALDIVAR, individually and on
behalf of all others similarly situated,

                          Plaintiff,

          - against -

JMJ CATERERS, INC. d/b/a
THE METROPOLITAN, MICHAEL
GIAMALVO, and JANENDER NARANG,

                  Defendants.
---------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 14-924 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Former dishwasher and food preparer Orbin Zaldivar ("Plaintiff") brings this wage and hour action, individually and on behalf of all other persons similarly situated, against Defendants JMJ Caterers, Inc. d/b/a The Metropolitan ("JMJ" or "the Metropolitan"), Michael Giamalvo, and Janender Narang (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, 29 U.S.C. § 215(a)(3), New York Labor Law ("NYLL") §§ 195, 198, and 215(1)(a), NYLL Article 19 §§ 650 et seq., and 12 New York Codes, Rules and Regulations ("NYCRR") §§ 137 and 142. Plaintiff alleges that the Defendants implemented a punch card system which unlawfully deprived him and similarly situated employees of overtime compensation. *See generally* Amended Complaint ("Am. Compl.") [DE 8].

Plaintiff now moves for conditional certification of a collective action and for notice of pendency to potential collective action members, pursuant to 29 U.S.C. § 216(b). *See* Plaintiff's Letter Motion to Certify FLSA Collective Action ("Pl.'s Mot.") [DE 29]. Defendants oppose the

motion, asserting, among other things, that Plaintiff rarely worked overtime but was paid overtime wages when he did so. *See* Declaration of Michael Gialmalvo ("Giamalvo Decl.") [DE 40], ¶ 5. Based on the Court's review of the parties' submissions as well as the applicable case law, Plaintiff's motion is hereby GRANTED.

I.    BACKGROUND

The following alleged facts are taken from the Amended Complaint and Plaintiff's declaration in support of his motion for conditional certification. *See* Declaration of Orbin Zaldivar ("Pl.'s Decl."), attached as Ex. 3 to Pl.'s Mot [DE 29-3]. The Metropolitan is a catering establishment located in Glen Cove, New York. *See* Am. Compl. ¶ 1. Beginning in January 2010, the Metropolitan was operated by former defendant AAFF, Inc. ("AAFF")[1] and defendant JMJ. *Id.* ¶ 2. Plaintiff alleges, upon information and belief, that AAFF sold the Metropolitan to JMJ in approximately December 2012. *Id.* Defendants Giamalvo and Narang are principals of JMJ. *Id.* ¶ 3.

Plaintiff worked as a dishwasher and food preparer for the Metropolitan from approximately February 2010 until December 21, 2013. *Id.* ¶¶ 4; 29; Pl.'s Decl. ¶ 4. During the period from approximately February 2010 through May 2011, Plaintiff worked from 9 a.m. to 9 p.m., Tuesday through Sunday, and was paid a regular rate of $10 per hour. Am. Compl ¶¶ 30-31; Pl.'s Decl. ¶ 5. From approximately May 2011 through the termination of his employment,[2] Plaintiff worked from 1 p.m. to 1 a.m., Tuesday through Sunday, and was paid a regular rate of $12 per hour. Am. Compl. ¶¶ 32-33; Pl.'s Decl. ¶ 6.

---

[1]    Defendants AAFF and Frank J. Sciame were dismissed by stipulation on December 30, 2014. *See* DE 23.

[2]    It is unclear from Plaintiff's submissions when he stopped working for Defendants. Paragraphs 2, 29, and 40 of the Amended Complaint state that Plaintiff worked the Metropolitan

Plaintiff alleges that, while he worked at the Metropolitan, Defendants did not pay him overtime wages for the hours he worked in excess of 40 hours per workweek. Pl.'s Decl. ¶ 7; Am. Compl. ¶ 34. Instead, Defendants paid Plaintiff in cash at his regular rate of pay for his overtime hours. Pl.'s Decl. ¶ 7; Am. Compl. ¶¶ 34, 36. Plaintiff alleges that this practice was not limited to him "but was used by the Metropolitan to deny overtime to all kitchen staff, servers and busboys." Pl.'s Decl. ¶ 8. The Metropolitan employed four kitchen staff while he worked there, as well as "at least 12 busboys and 4 servers." *Id.* ¶ 9.

According to the Plaintiff, "[i]n order to avoid detection in the event of an audit, and to feign compliance with wage and hour laws, the Defendants implemented a 'two punch card' system." Am. Compl. ¶ 35; *see* Pl.'s Decl. ¶ 10. Under this system, "Plaintiff was instructed to record the first 40 work hours on one punch card," and "was paid for his first 40 hours worked by paycheck, from which payroll taxes were deducted." Am. Compl. ¶ 35. "Plaintiff was instructed to record any hours worked in excess of 40 on a second punch card" and "was paid in cash, at the regular rate, for all hours worked in excess of 40." *Id.* The Amended Complaint provides two examples of how the "two punch card" system was applied to Plaintiff:

> [D]uring the pay period from November 25, 2013 through December 1, 2013, according to the Plaintiff's recollection, the Plaintiff worked approximately 72 hours (Tuesday to Sunday, 1:00 pm – 1:00 am, without an uninterrupted meal period). The Plaintiff was paid for the first 40 hours by paycheck, subject to withholding, at the regular rate of pay. The approximate 32 hours of overtime were paid in cash at the regular rate of pay, rather than at the overtime rate. . . .

---

until December 21, 2013, Am. Compl. ¶¶ 4, 29, 40, while paragraphs 32 and 33 state that Plaintiff worked at the Metropolitan until December 21, 2014, *id.* ¶¶ 32-33. Plaintiff's declaration contains the same discrepancy. *See* Pl.'s Decl. ¶¶ 4, 6. Defendant Giamalvo states in his declaration that Plaintiff "was employed by JMJ from December 28, 2012 to approximately December 21, 2013." Giamalvo Decl. ¶ 3.

> [D]uring the pay period December 9, 2013 through December 15, 2013, according to the Plaintiff's recollection, the Plaintiff again worked approximately 72 hours (Tuesday to Sunday, 1:00 pm – 1:00 am, without an uninterrupted meal period). The Plaintiff was paid for the first 40 hours by paycheck, subject to withholding, at the regular rate of pay. The approximate 32 hours of overtime were paid in cash at the regular rate of pay, rather than at the overtime rate.

Am. Compl. ¶¶ 36-37.

In his declaration, Plaintiff also describes the "two punch card" system. According to Plaintiff, he was taught to use the system "by a woman named 'Pamela.'" Pl.'s Decl. ¶ 10. Pamela told Plaintiff "to punch the first card for four days, and then she would take out the first card and replace it with a second." *Id.* Thus, each week Plaintiff "punched two cards." *Id.* Plaintiff states that this system was in place for "the entire time" he worked at the Metropolitan. *Id.* The punch clock is located in the basement of the Metropolitan, and next to the punch clock is "a punch card rack with the name of each employee." *Id.* ¶ 11. While Plaintiff was employed at the Metropolitan, "[t]here were about 24 punch cards total, one for each employee." *Id.* "Each employee used one punch card for the first 40 hours, and a second punch card to record overtime hours." *Id.* ¶ 10. Pamela would then "check the cards of each employee. When the employee reached 40 hours (usually after 4 days), she would remove the first punch card (the regular punch card), and replace it with a new card (the overtime card)." *Id.* ¶ 12. Plaintiff estimates that he personally witnessed Pamela replacing punch cards "at least 10 times." *Id.* ¶ 13.

Plaintiff further alleges that the "two punch card" system "was used for all busboys, servers, and kitchen workers" at the Metropolitan. *Id.* ¶ 14. In 2012, Plaintiff had a conversation with Alberto, a busboy, who told Plaintiff "that it 'wasn't good' that he worked so many hours and that he was not paid for overtime at 'time-and-a-half.'" *Id.* ¶ 15. On another occasion,

Plaintiff overheard a server named Alma "complain to a group of busboys and servers that she was unhappy with the Metropolitan's not paying overtime to them." *Id.* ¶ 16.

Plaintiff alleges that he complained about the denial of overtime pay to defendant Giamalvo. More specifically, Plaintiff states in his declaration that, in December 2013, he told Giamalvo and his partner that he "deserved a ½ hour lunchbreak and that . . . [he] wanted to be paid extra for [his] overtime hours." *Id.* ¶ 17. Giamalvo and his partner allegedly said that they could not pay Plaintiff overtime. *Id.* The Amended Complaint further asserts that, on December 21, 2013, Plaintiff asked Giamalvo to be paid overtime premiums for all hours worked in excess of 40 per week. Am. Compl. ¶ 40. Giamalvo allegedly "told the Plaintiff that he would not pay the overtime premium, shouted expletives, and told him 'you can leave.'" *Id.* ¶ 41. Plaintiff asserts that "Defendants are aware or should have been aware that federal law required them to properly record all hours worked by the Plaintiff," and "to pay overtime premiums to the Plaintiff for hours worked in excess of 40 per workweek." *Id.* ¶¶ 38-39. Accordingly, Plaintiff alleges that Defendants' violations of the FLSA and the NYLL "have been willful." *Id.* ¶¶ 55, 63.

Based on the foregoing allegations, Plaintiff brings this action, individually and on behalf of all those employees similarly situated, to recover for Defendants' violations of the FLSA and NYLL. Plaintiff now seeks to conditionally certify the FLSA claims pursuant to 29 U.S.C. § 216(b).

## II.    LEGAL STANDARD

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

> equal amount as liquidated damages. . . . An action to recover . . .
> may be maintained against any employer (including a public
> agency) in any Federal or State court of competent jurisdiction by
> any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee
> shall be a party plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent is filed
> in the court in which such action is brought.

29 U.S.C. § 216(b).

Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages.  *Id.*; *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011); *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a two-step method" for analyzing collective action certification); *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 583 (E.D.N.Y. 2012); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at *2 (E.D.N.Y. July 23, 2015) *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015); *Amador v. Morgan Stanley & Co., LLC*, No. 11-CV-4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013).  First, the court determines whether the proposed class members are "similarly situated."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001).  If the court decides in the affirmative, then the proposed class members must consent in writing to be bound

by the result of the suit, or "opt-in." *McGlone,* 867 F. Supp. 2d at 442; *see* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (quotations omitted).

The instant motion concerns only the first step: whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see, e.g.*, *Perez v. Allstate Ins. Co*., No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp*., No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need

7

not meet the requirements of Rule 23 for class certification." *Rodolico*, 199 F.R.D. at 481

(collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014)

(stating that a collective action under the FLSA "is different than a typical class action under the

Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality,

typicality, and adequate representation – do not apply to a collective action").

At the initial certification stage, courts do not require proof of an actual FLSA violation,

"but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other

potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)

(quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug.

22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117,

at *6 (E.D.N.Y. 2015); *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y.

2012). This determination is typically "based on the pleadings, affidavits and declarations"

submitted by the plaintiff or plaintiffs. *See Fa Ting Wang*, 2015 WL 4603117, at *6; *Robles v.

Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18,

2013); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (court's initial

determination based on "pleadings and affidavits"); *see also Hallissey v. Am. Online, Inc.*, No.

99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this

requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and

declarations of other potential class members.").

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-

existent.'" *Boice v. M+W U.S., Inc.*, No. 14-CV-0505, --- F. Supp. 3d ---, 2015 WL 5316115, at

*11 (N.D.N.Y. Sept. 11, 2015) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10–CV–7735,

2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)). As the Second Circuit has explained,

"[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

However, the standard of proof should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553. With this in mind, courts have routinely found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs"); *Kemper v. Westbury Operating Corp.*, No. CV 12-0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-CV-265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting motion for conditional certification based on declaration by the plaintiff "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the statutory minimum wage and

not paid overtime pay") (citing *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008)); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who were subject to the same policies); *see also Doucoure*, 554 F. Supp. 2d at 373 (permitting preliminary certification where plaintiff offered his complaint which contended that he routinely worked in excess of forty hours per week, the defendant failed to pay him overtime, and there were similarly situated hourly employees also denied overtime).

## IV.  DISCUSSION

### A.  Conditional Certification

Plaintiff seeks conditional certification as to the following group:

> All servers, busboys and kitchen workers of The Metropolitan who have been employed at any time from December 28, 2012 until the present.

[Proposed] Notice of Pendency of Lawsuit ("Proposed Notice"), attached as Ex. 1 to Pl.'s Mot. Plaintiff asserts that he has satisfied the first step of the conditional certification analysis – that is, he has adequately shown that there are other similarly situated employees "who were subject to [Defendants'] common policy of failing to pay overtime at the overtime rate by, *inter alia*, using a two punch card system."  Pl.'s Mot. at 4.

In moving for conditional certification, Plaintiff relies on the facts alleged in the Amended Complaint, his own declaration, employee time cards produced by Defendants, *see* DE 31-37, and the declaration of Debra Nimkoff, a paralegal for Plaintiff's counsel who analyzed the time cards.  *See* Declaration of Debra Nimkoff ("Nimkoff Decl.") [DE 30].  In her declaration, Nimkoff explains that she analyzed time cards from a two-year time period,

beginning January 2013 and ending December 2014, by selecting a sample of four months from each year and reviewing all of the time cards in each pay period. *See* Nimkoff Decl. ¶¶ 6-7. The time cards are "sequentially numbered from 000-099" and Nimkoff "recorded the number of cards in each pay period, the sequence of the cards, and the number of cards missing from within the sequences in the sample." *Id.* ¶ 7. For 2013, Nimkoff reviewed the time cards for February, June, August and October. *Id.* ¶ 9. "Each month sampled had an average '% of Cards not in sequential order' of over 20%, and ranging from 22% to 29% missing." *Id.* For 2014, "two months in the sample had 16% of the cards out of sequential order and two months had 22.3% and 24.0% of the cards missing." *Id.* Nimkoff also calculated the percentage of time cards from her sample which "revealed days with the Spread of Hours greater than 10 hours" in one day. *Id.* ¶ 10. In the sample for 2013, 104 time cards, or 18%, "recorded days with hours extending 10 hours or longer." *Id.* ¶ 11. In the sample for 2014, 69 time cards, or 13.4%, "recorded days with hours extending 10 hours or longer." *Id.* Nimkoff points out that, in 2014, "the percent of cards with days longer than 10 hours appeared to continually decrease as the year progressed, from 18.3% in January, down to 9.1% in July, and 3.2% in September." *Id.*

In opposition to the motion, Defendants have submitted the declaration of defendant Giamalvo, the President of JMJ.[3] Giamalvo Decl. ¶ 1. Giamalvo disputes several of the factual

_____

[3]    Defendants have also submitted a three-page declaration by their counsel, Alan M. Davis, Esq. *See* Declaration of Alan M. Davis ("Davis Declaration") [DE 40]. The Court has reviewed the Davis Declaration and finds that, although it does not cite case law, the declaration largely reiterates the factual and legal arguments contained in the Giamalvo Declaration. *See, e.g.*, *id.* ¶ 7. ("Mr. Giamalvo states that for the most part, The Metropolitan only hosts events on Friday evenings, Saturdays and Sundays, and that the servers, runners and bartenders only work one shift per day. As such, the servers, runners and bartenders do not work overtime."); *id.* ¶ 8 ("Based on the foregoing, the only employees of The Metropolitan that are similarly situated to Plaintiff, Orbin Zaldivar, are those employees that are classified as kitchen staff."). "'Declarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal

allegations set forth in the Amended Complaint and Plaintiff's declaration.  First, Giamalvo

asserts that Plaintiff could not have worked at the Metropolitan "from 1:00 p.m. to 1:00 a.m.

every day from Tuesday to Sunday" as he alleges because "the Metropolitan only hosts events on

Friday evenings, Saturdays and Sundays" and "[t]here would be absolutely no reason for a

dishwasher and food preparer to work seventy-two hours in any given week."  *Id.* ¶ 4.  Second,

Giamalvo maintains that Plaintiff "rarely worked overtime but when he did he was paid for his

overtime."  *Id.* ¶ 5.  To support this contention, Giamalvo has submitted copies of ten of

Plaintiff's time cards from April 2013 through November 2013, which, according to Giamalvo,

show that Plaintiff "was paid overtime for the weeks indicated by the time cards."  *Id.*  Third,

Giamalvo disputes Plaintiff's claim that the servers and busboys at the Metropolitan also were

not paid time-and-a-half for overtime.  *Id.* ¶ 6.  Giamalvo contends that the Metropolitan does

not employ any busboys, since "[t]ables are bussed by their servers."  *Id.*  Rather, the

Metropolitan employs "servers, runners, and bartenders" in addition to the kitchen staff – the

runners being the "employees who bring the food from the kitchen to the rooms where the events

are being held."  *Id.*  Giamalvo further asserts that the servers, runners, and bartenders "only

work one shift per day" when the Metropolitan hosts events on Friday evenings, Saturdays and

Sundays, so it would be "impossible" for these employees "to work overtime."  *Id.* ¶ 7.  Fourth,

---

arguments.'"  *East End Eruv Ass'n, Inc. v. Town of Southampton*, No. CV 13–CV–4810, 2014
WL 4826226, at *9 (E.D.N.Y. Sept. 24, 2014) (quoting *Clark v. Kitt*, No. 12–CV–8061, 2014
WL 4054284, at *7 (S.D.N.Y. Aug.15, 2014)).  Although such practice may be acceptable in
state court proceedings, it is not acceptable in federal court.  *See Mercer v. Mercer*, No. 13–CV–
5686, 2014 WL 3654667, at *5 (E.D.N.Y. May 22, 2014).  The Court points out that the
distinction between the Nimkoff Declaration and the Davis Declaration, namely, that Nimkoff
reviewed punch cards provided by Defendants during discovery and summarized the contents,
without advancing legal arguments.  Accordingly, the Court will not consider the Davis
Declaration in deciding this motion.  *See East End Eruv*, 2014 WL 4826226, at *9-*10; *Clark*,
2014 WL 4054284, at *7.

Giamalvo maintains that the only employees who are similarly situated to Plaintiff "are those workers that are classified as kitchen staff." *Id.* ¶ 9. During the time that JMJ has operated the Metropolitan, Giamalvo notes that it has employed approximately five kitchen staff, three bartenders, and 46 servers and runners. *See id.* ¶ 8.

Having reviewed the motion for conditional certification, the Court finds that Plaintiff has made the "modest factual showing" necessary to demonstrate that he and the potential plaintiffs together "were victims of a common policy or plan that violated the law." *See Doucoure*, 554 F. Supp. 2d 369, 372; *Sbarro*, 982 F. Supp. at 261; *Trinidad*, 962 F. Supp. 2d at 552-53. Further, Plaintiff has established a "sufficient factual nexus" between his situation and that of the putative collective. *See Sobczak*, 540 F. Supp. 2d at 362; *Wraga*, 2006 WL 2443554, at *1.

Specifically, Plaintiff outlines in his declaration the alleged "common policy or plan" which violated the FLSA and the NYLL. Plaintiff asserts that he regularly worked 12-hour shifts six days a week at the Metropolitan. *See* Pl.'s Decl. ¶¶ 5-6. Defendants did not pay Plaintiff overtime at the overtime rate pay, and instead paid him cash at the regular rate of pay for his overtime hours. *Id.* ¶ 7. Defendants purportedly employed a "two punch card system" at the Metropolitan during Plaintiff's entire period of employment. *Id.* ¶ 10. Each week, Plaintiff would punch two cards: a "regular punch card" and an "overtime card." *Id.* ¶ 12. Plaintiff utilized a "regular punch card" until he reached 40 hours for the week, at which point Defendants replaced the regular punch card with an "overtime punch card." *Id.* According to Plaintiff, Defendants implemented this two punch card system "[i]n order to avoid detection in the event of an audit, and to feign compliance with wage and hour laws." Am. Compl. ¶ 35; *see* Pl.'s

Decl. ¶ 10. When Plaintiff complained about the denial of overtime pay to Giamalvo and his business partner, they told him that they could not pay him overtime. Pl.'s Decl. ¶ 17; *see* Am. Compl. ¶¶ 40-41.

In addition, Plaintiff's declaration sufficiently alleges that other similarly situated employees of Defendants did not receive proper overtime compensation. Plaintiff states that Defendants' practice of paying cash at the regular rate of pay for overtime hours "was not limited to [him], but was used by the Metropolitan to deny overtime to all kitchen staff, servers, and busboys." Pl.'s Decl. ¶ 8. Plaintiff personally spoke with a busboy named Alberto in 2012 who stated that he was not paid time-and-a-half for his overtime, and Plaintiff overheard a server named Alma complain about the Metropolitan's failure to pay overtime wages. *Id.* ¶¶ 15-16. Another employee told Plaintiff that, since the commencement of this lawsuit, the Metropolitan no longer has its employees work overtime. *Id.* ¶ 18. Plaintiff further maintains that all busboys, servers, and kitchen workers used the "two punch card system" while he worked at the Metropolitan. *Id.* ¶ 14. At that time, the Metropolitan employed four kitchen staff, "at least 12 busboys and [four] servers." *Id.* ¶ 9. Plaintiff also observed approximately 24 employee punch cards in the punch card rack. *Id.* ¶ 11.

Finally, Plaintiff has provided a sampling of employee time cards as well as Nimkoff's declaration as evidentiary support for his allegations regarding the two punch card system. Nimkoff sets forth in her declaration that between 22% and 29% of the time cards were missing from each pay period she analyzed, while an average of 20% of the time cards were out of sequential order. Nimkoff Decl. ¶ 9. Because time cards were "missing from the sequence" analyzed by Nimkoff, Plaintiff asserts that the omission demonstrates that Defendants were "secreting a second time card" by using a two punch card system. Pl.'s Mot. at 3. However, it is

not appropriate at this preliminary certification stage for the Court to determine whether this evidence, in fact, shows that Defendants were "secreting" a second time card, or to consider what (if any) weight should be given to the assertions set forth in Nimkoff's declaration. *See generally*, *Bates v. Valente Landscaping, Inc.*, No. 14-CV-1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014) (noting court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations" during the first step in the certification process) (citation and internal quotation marks omitted); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013) ("[T]he Court at this point does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits.") (internal quotation marks omitted). Rather, the Court is satisfied that the proffered evidence provides some support, however marginal, to Plaintiff's factual showing that he and the potential opt-in plaintiffs were subject to an unlawful policy or practice which deprived them of overtime compensation.

As discussed, a plaintiff in an FLSA case must meet only a minimal evidentiary burden at the collective action certification stage. *See Damassia v. Duane Reade Inc.*, No. 04-CV-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (characterizing a plaintiff's burden at this stage as "minimal"); *Lee*, 236 F.R.D. at 197 (recognizing plaintiff's minimal burden at this stage). The Court finds that the allegations set forth in Plaintiff's declaration, together with the facts alleged in the Amended Complaint, establish enough of a factual nexus between Plaintiff's circumstances and the circumstances of other current and former kitchen workers, busboys, and servers. *See generally*, *Bhumithanarn*, 2015 WL 4240985, at *3; *Kemper*, 2012 WL 4976122, at *2; *Khamsiri*, 2012 WL 1981507, at *1. Thus, Plaintiff has satisfied his modest burden at this

stage of the litigation and has provided a sufficient basis for the Court to grant conditional certification.

The Court finds Defendants' arguments in opposition to the motion to be unpersuasive. Primarily, Defendants contest several factual allegations underlying Plaintiff's claims, such as: (1) the number of hours per week Plaintiff worked at the Metropolitan; (2) whether Plaintiff worked overtime; (3) whether Plaintiff was paid overtime wages; (4) whether the Metropolitan employed busboys; and (5) whether the servers, runners, and busboys worked overtime and were paid overtime wages. *See* Giamalvo Decl. ¶¶ 4-7. The Court cannot resolve these disputes without evaluating the parties' credibility and engaging in a factual analysis – actions which, as discussed, are inappropriate at this stage in the proceedings. *See, e.g.*, *Hamadou*, 915 F. Supp. 2d at 662 (internal quotation omitted); *Bates*, 2014 WL 2111080, at *1; *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) ("At [the conditional certification] phase, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations."). Defendants also have submitted copies of Plaintiff's time cards in an attempt to rebut his assertion that he was not paid overtime wages. *See* Time Cards annexed to Giamalvo Decl. [DE 40]. This proffer, too, amounts to a premature request for the Court to weigh evidence, "which is not appropriate until the second stage after discovery." *Flood v. Carlson Rests., Inc*., No. 14-CV-2740, 2015 WL 260436, at *5 n.6 (S.D.N.Y. Jan. 20, 2015) (rejecting defendants' efforts to weigh competing declarations and other evidence rebutting plaintiffs' conditional certification motion); *see, e.g.*, *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 456 (E.D.N.Y. 2014) (same). The Court further notes that, at the preliminary certification stage, "the focus of the court's inquiry is not on the defendants' evidence, but on whether the plaintiff[] have made their requisite showing." *Bijoux*, 2015 WL

4505835, at *13 (internal quotation marks and alteration omitted). For these reasons, the Court

need not consider factual disputes and evidence proffered by Defendants since such information

does not impact the Court's determination that conditional certification is warranted here.

Defendants further contend the Plaintiff may only be considered similarly situated to the

"five kitchen staff employees" who worked at the Metropolitan during the time it has been

operated by JMJ. Giamlavo Decl. ¶¶ 8-9. Defendants have not adequately explained their basis

for this contention nor have they provided any legal authority to support it. To the extent

Defendants are arguing that, as a former dishwasher and kitchen worker, Plaintiff is not similarly

situated to putative opt-in plaintiffs who perform different job functions – such as servers,

runners, bartenders, and busboys – this argument is unavailing. "Courts in this district and

elsewhere routinely reject attempts to limit certification based on job function." *Mendoza v.

Little Luke, Inc.*, No. CV 14-3416, 2015 WL 5918580, at *3 (E.D.N.Y. Oct. 9, 2015) (citing *Ritz

v. Mike Rory Corp.*, No. 12-CV-367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013)

(rejecting limiting conditional class to bartenders and instead, including all tipped service

workers in conditional class); *Calderon.*, 892 F. Supp. 2d at 464 (refusing to limit certification to

positions held by named plaintiffs); *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363,

368 (S.D.N.Y.2007) (rejecting as frivolous defendant's argument that certification should be

limited to duck feeders); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010)

(certifying employees despite varying positions and functions)). Once again, the focus at the

initial certification stage "is on the issue of whether the Plaintiffs were the victims of a common

policy or plan which violated the law—and less so on whether the Plaintiffs performed identical

job functions." *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12- CV-3203, 2013 WL 8367807,

at *4 (E.D.N.Y. Sept. 19, 2013) (granting certification where the plaintiffs "submitted evidence

which suggests that the allegedly improper overtime policy was not limited to banquet servers, but rather was applied to all service employees"); *see also Rosario*, 828 F. Supp. 2d at 517 ("It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs." (alteration and quotation marks omitted)). Accordingly, "[i]n the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Guaman v. 5 M Corp.*, No. 13-CV-3820, 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (quoting *Summa*, 715 F. Supp. 2d at 390).

Here, Plaintiff has made the required modest factual showing that he and the potential collective action members were victims of a common wage and overtime compensation practice which violated the FLSA, and thus were similarly situated. *See, e.g.*, *Cohan*, 2013 WL 8367807, at *4. The fact that there may be "variations in positions and job functions" among the proposed class of servers, busboys, and kitchen workers which the Plaintiff seeks to conditionally certify "do[es] not, at this preliminary stage, change th[is] result." *Summa*, 715 F. Supp. 2d at 391; *see generally Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 126 (S.D.N.Y. 2011) (certifying class, including servers, hosts, delivery-persons, runners, bus-persons, porters, bartenders, cooks, food preparers, dishwashers, and flyer distributors where plaintiffs provided evidence that their payroll checks did not accurately reflect all hours that they worked and employees were made to "clock out" for an hour each shift); *Williams v. Twenty Ones, Inc.*, No. 07-CV-3978, 2008 WL 2690734, at *1–2 (S.D.N.Y. June 30, 2008) (certifying FLSA collective action of sports bar's office workers, waiters, bartenders, runners, and bussers where various violations of the FLSA

alleged); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320, 322 (S.D.N.Y. 2007) (certifying class of "all non-exempt persons employed by Defendants in any hourly position, including but not limited to waiters, bartenders, runners and/or bussers" where "all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations").

Moreover, to the extent that Defendants imply that certification should be denied because Plaintiff has not identified a large enough number of potential opt-in plaintiffs, that argument, too, must fail. It is well-settled that, under the FLSA, "'no showing of numerosity . . . need be made.'" *Iglesias–Mendoza*, 239 F.R.D. at 368 (quoting *Young*, 229 F.R.D. at 54). Rather, "'courts have conditionally certified collective actions under the FLSA where plaintiffs, based on their firsthand observations, identify an approximate class of similarly situated individuals.'" *Romero v. La Revise Associates, L.L.C.*, 968 F. Supp. 2d 639, 646 (S.D.N.Y. 2013) (quoting *Hernandez v. Immortal Rise, Inc.*, 11-CV-4360, 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012) (holding that plaintiffs had met the modest showing where they alleged that based on their conversations with their co-workers, they believe that other employees suffered the same underpayment)); *see, e.g, Iglesias–Mendoza*, 239 F.R.D. at 368 (granting conditional certification where plaintiffs alleged that to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class); *Wraga*, 2006 WL 2443554, at *2 (approving collective action notice where plaintiff demonstrated knowledge of conversations between other employees and conversations between employees and defendant in which they complained that they were improperly paid).

Here, Plaintiff has done just that, stating in his declaration (1) that he witnessed an employee of Defendants replacing punch cards "at least 10 times" as part of the "two punch

card" system which "was used for all busboys, servers, and kitchen workers" at the Metropolitan; (2) that he spoke with a busboy named Alberto who told Plaintiff "that he was not paid for overtime at 'time-and-a-half'"; and (3) the he overheard a server named Alma "complain to a group of busboys and servers that she was unhappy with the Metropolitan's not paying overtime to them." Pl.'s Decl. ¶¶ 13-16. "The affidavit of a plaintiff attesting to the existence of similarly situated plaintiffs is sufficient for the purposes of a motion to approve a collective action." *Romero*, 968 F. Supp. 2d at 646; *Hernandez*, 2013 WL 5303766, at *3 (collecting cases); *accord Little Luke*, 2015 WL 5918580, at *7 ("[I]t is often held that conditional certification of a collective action based on the affiant's observations of and conversations with other potential class members can satisfy the low burden required to demonstrate that the plaintiffs and potential plaintiffs together were victims of a common policy or plan that violated the law. . . . This is true even if the sole support lies within one lone affidavit." (internal citations and quotation marks omitted)). Moreover, the fact that Plaintiff has identified potential class members only by first name and has not identified an entire opt-in class is not fatal to his motion for conditional certification. *See, e.g., Little Luke*, 2015 WL 5918580, at *7 ("[T]he fact that identification of potential class members by only first name is not fatal to the motion."); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07- CV-5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) ("[A]lthough plaintiff has not identified any other employees who seek to opt in, this is not fatal in light of defendant's failure to keep proper records, the allegations plaintiff makes in his affidavit about observing fellow employees working overtime without proper compensation, and the minimal burden required for certification as a collective action."); *Pefanis v. Westway Diner, Inc.*, No 08-CV-002, 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008) ("The fact that no such employee has yet joined this action does not make notice inappropriate.").

Accordingly, the Court finds that Plaintiff has met his burden to show that the proposed

collective action members are generally "similarly situated." *See McGlone*, 867 F. Supp. 2d at

442; *Rubery*, 569 F. Supp. 2d at 336. Therefore, the Court will conditionally certify the class

proposed by the Plaintiffs, as outlined below.

### B.    Proposed Opt-In Class

As noted, Plaintiff moves for conditional certification of the following proposed opt-in

class:

> All servers, busboys and kitchen workers of The Metropolitan who
> have been employed at any time from December 28, 2012 until the
> present.

*See* Proposed Notice [DE 29-1]. Defendants have not addressed the scope of the class definition

in their opposition.

The FLSA has a two-year statute of limitations except in the case of willful violations, for

which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). Plaintiff asserts in his

Amended Complaint that Defendants' violations of the FLSA were willful and the three-year

statute of limitations should apply to those claims. *See* Am. Compl. ¶¶ 55-56. "At the

conditional certification stage, allegations of willful conduct are sufficient to apply the three-year

statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, No. 14-

CV -1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d

at 388; *Francis v. A & E Stores, Inc.*, No. 06–CV−1638, 2008 WL 2588851, at *3 (S.D.N.Y.

June 26, 2008) (noting that at the preliminary stage, "plaintiff's allegations of willful conduct . . .

are sufficient to support defining the class based upon the three-year statute of limitations),

*adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct.16, 2008)); *see Patton v. Thomson Corp.*,

364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y. 2005) (finding allegation of willful violation justified

notice based on a three-year statute of limitations period); *see also Alvarez*, 839 F. Supp. 2d at 587-88 ("The Plaintiffs have alleged willfulness in their Complaint . . . and the Defendants deny these allegations. Courts in this circuit have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage."). As the Amended Complaint contains allegations of willful conduct by Defendants, the Court finds it appropriate to apply the three-year statute of limitations under the FLSA at this stage of the proceedings. *See, e.g.*, *Jie Zhang*, 2015 WL 6442545, at *5.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order or the notice since the FLSA statute of limitations continues to run until a plaintiff consents to join the action. *See* 29 U.S.C. § 256; *Ritz*, 2013 WL 1799974, at *3. "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14) (internal alteration omitted); *see, e.g.*, *Hamadou*, 915 F. Supp. 2d at 668; *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). Additionally, in this case, Plaintiff alleges that Defendants failed to post wage-and-hour notices in violation of NYLL § 195, which some courts have held implicates equitable tolling. *See Fa Ting Wang*, 2015 WL 4603117, at *13; *Gaspar*, 2014 WL 4593944, at *7 (citing *Baba v. Grand Cent. P'ship, Inc.*, No. 99–CV–5818, 2000 WL 1808971, at *3 (S.D.N.Y. Dec. 8, 2000)). The Court therefore concludes that

"the remedial purposes of the FLSA are best served" here by extending the three-year statute of limitations from the date of the filing of the Amended Complaint in this action. *Fa Ting Wang*, 2015 WL 4603117, at *13; *Guzelgurgenli*, 883 F. Supp. 2d at 357 ("In light of potential issues with equitable tolling, the Court agrees that, in an abundance of caution, the notice should be sent to all relevant employees" for the period running from the date of filing of the complaint.) (citing *Whitehorn*, 767 F. Supp. 2d at 451); *see Trinidad*, 962 F. Supp. 2d at 564 (granting conditional certification for non-exempt employees who worked from the defendant from three years prior to the filing of the amended complaint).

Thus, FLSA conditional certification in this action is limited to claims arising after March 27, 2012 to the present. The Court notes, however, that Plaintiff has prospectively limited the proposed opt-in class to all servers, busboys, and kitchen workers who worked for Defendants from December 28, 2012 (*i.e.*, approximately two years and three months prior to the filing of the Amended Complaint) to the present. *See* Proposed Notice. The Court presumes that Plaintiff designated this time period because Defendants assert in their Answer that they have been operating the Metropolitan since December 28, 2012. *See* Answer [DE 10], at ¶ 2.

Based on the foregoing analysis, the Court grants conditional certification to the opt-in class proposed by Plaintiffs. The Court designates this class as follows:

> All servers, busboys and kitchen workers employed by the Metropolitan at any time from December 28, 2012 until the present.

## C. Discovery of Identifying Information

Plaintiff requests that the Court direct Defendants to produce a computer-readable data file containing the names, last-known mailing addresses, telephone numbers, dates of birth, work

locations, and dates of employment of potential collective members.  *See* Pl.'s Mot. at 1-2. Defendants have not addressed this request.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."  *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citing *Puglisi v. TD Bank, N.A.,* No. 13-CV-637, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotations and citations omitted); *Rosario,* 828 F. Supp. 2d at 522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse Executive Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs")); *see, e.g.*, *Fa Ting Wang*, 2015 WL 4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York).  Courts are, however, reluctant to authorize disclosure of private information, such as dates of birth and social security numbers, in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action.  *See, e.g.*, *Jie Zhang*, 2015 WL 6442545, at *7 (granting the plaintiffs' request for a list of the names, addresses, phone numbers, last-known email addresses, work locations, and dates of employment for potential plaintiffs, but declining request for social security numbers because the plaintiffs "have not established a particularized need" for this information); *Velasquez*, 2014 WL 2048425, at *15 (directing the defendants to

provide the plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members, but not their dates of birth and social security numbers); *Brabham v. Mega Tempering & Glass Corp.*, No. 13-CV-54, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013) ("The purpose of the production of potential opt-in plaintiffs is to enable Plaintiffs to notify them of the collective action . . . The production of names, addresses, phone numbers and email addresses plainly serves that purpose, while birth dates and Social Security numbers are not necessary for Plaintiffs to perform their notification task.") (internal citation omitted); *Rosario*, 828 F. Supp. 2d at 522 ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture. If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees.").

Accordingly, the Court is directing Defendants to provide Plaintiff with a computer-readable list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members who worked at the Metropolitan for the relevant time period. The list is to be furnished within 14 days of the entry of this Order and is to be treated by the parties as confidential. To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose. If Plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, Plaintiff may renew his application for the additional information.

**D.      Form of Notice of Pendency and Consent to Join Form**

Plaintiff has provided for Court approval a Proposed Notice and Consent to Join form

written in both English and Spanish.  *See* DE 29-1.  Defendants have not addressed the content

of the proposed Notice or the Consent form in their opposition.

"[T]he district court has discretion regarding the form and content of the notice."  *In re*

*Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *4–5; *ABC Carpet*, 236 F.R.D. at 202

("[T]he Supreme Court has noted that the "details" of notice should be left to the broad

discretion of the trial court.") (citing *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)).

Because Defendants did not address the contents of the Proposed Notice of Pendency, the Court

is giving them a brief opportunity to do so.  Any objections to the Proposed Notice must be filed

with the Court no later than March 4, 2016.  Any objections must be received by that date or will

be deemed waived.  Immediately after March 4, 2016, the Court intends to issue its ruling

regarding the content of the Notice.

**V.      C<span>ONCLUSION</span>**

For all of the foregoing reasons, Plaintiff's motion for conditional certification as an

FLSA collective action pursuant to Section 216(b) is GRANTED subject to the limitations

discussed herein.  The Court certifies the following group:

> All servers, busboys and kitchen workers employed by The
> Metropolitan at any time from December 28, 2012 until the present.

The Court further orders that:

1.      Within 14 days of entry of this Order, Defendants are to produce a list of the

names, addresses, telephone numbers, email addresses, and dates of employment for all servers,

busboys, and kitchen workers who worked at the Metropolitan dating back to December 28,

2012;

2.     Defendants are to file their objections to the Proposed Notice of Pendency (if any)

by March 4, 2016.

**SO ORDERED.**

Dated: Central Islip, New York
       February 26, 2016

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge